IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **Steven Leon Banks,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | 1:14cv205 (CMH/JFA) |
| | ) | |
| **Dr. Vincent Gore, et al.,** | ) | |
| **Defendants.** | ) | |

FILED JUN - 3 2016 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Steven Leon Banks filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs at Greensville Correctional Center ("GCC"). The defendants have filed a Motion for Summary Judgment, as well as a memorandum of law and numerous supporting exhibits. Dkt. Nos. 56, 57. Plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff did not file a response, and the matter is now ripe for disposition. For the reasons that follow, defendants' Motion for Summary Judgment must be granted.

### I. Plaintiff's Allegations

A. Nurse Angela Smith

In his Second Amended Complaint, plaintiff contends that Nurse Angela Smith is liable for medical malpractice because she terminated his dialysis treatment on a day in which the water system on the dialysis machine went down, June 14, 2013. Dkt. No. 40 at 8. Plaintiff claims that he became very ill and had to be placed in the infirmary as a result. Id.

B. Dr. Vincent Gore

Plaintiff also contends that Dr. Vincent Gore is liable to him for deliberate indifference to his serious medical needs and medical malpractice. Id. at 5-9. First, plaintiff claims that he

injured his head, resulting in a "severe concussion," when he slipped and fell on a wet floor at GCC sometime in 2012. Id. at 7. He claims that, over a year after his fall, in October 2013 and January 2014, Dr. Gore refused three requests made by plaintiff's primary doctor for an offsite neurology appointment. Id. at 3-5. Plaintiff claims that as a result of Dr. Gore's refusal, he suffers from continued pain in his head, dizziness, and paralysis in his left side. Id. He asserts that Dr. Gore's denial of the three requests constitutes deliberate indifference. Id. at 8.

Second, plaintiff claims that in February 2014 he begged Dr. Gore to treat his Hepatitis C with a new HCV drug, Harvoni, and Dr. Gore wrongfully denied his request. Id. at 8. Plaintiff contends that he continues to suffer side effects due to damage to his liver as a result of Dr. Gore's denial of his repeated requests for Harvoni. Id. at 8-9. Finally, plaintiff claims that in March 2014 Dr. Gore refused a gastroenterologist request for removal of kidney stones from plaintiff's "bi[le] duct." Id. at 9.

### C. Nurse Shearyl Kee

There are no allegations in the Second Amended Complaint against Nurse Shearyl Kee, and she is not listed among the defendants. The Second Amended Complaint is the operative complaint in this case, so any initial claims against her must be dismissed.

Plaintiff requests declaratory relief, punitive damages of $500,000, and compensatory damages of $75,000 from Dr. Gore.

## II. Undisputed Factual Background

At all times relevant to this lawsuit, Dr. Vincent Gore treated plaintiff based upon his medical judgment and experience. See Dkt. No. 57, Ex. 1 ("Gore Dec.") ¶¶ 4-5. Dr. Gore approved specialist consultations and procedures for plaintiff on several occasions. Gore Dec. ¶ 5; Dkt. No. 57, Ex. 2 ("Med. Rec.") at 8, 12, 28.

On January 16, 2014, a year and a half after plaintiff's reported fall, Dr. Gore

recommended deferral of a neurology consultation requested by a provider, and he instead recommended that plaintiff be seen in the clinic for 6 months first. Gore Dec. ¶ 5; Med. Rec. at 11. Dr. Gore believed that more information and extensive observation were necessary before an offsite neurology consultation was to be scheduled; specifically, he noted that plaintiff had other medical conditions, including congestive heart failure, and some of the medications used to treat those conditions could have caused plaintiff's headaches and dizziness. Id. Dr. Gore also recommended that if plaintiff had increased back or leg pain, physical therapy should be considered. Id.

Plaintiff had reported left leg weakness, headache, dizziness, and lower back pain to Dr. Gore, and Dr. Gore's neurological evaluation of him was within normal limits. Id. Specifically, plaintiff's lower spinal x-rays showed normal alignment with anterior wedging (potentially from osteoporosis) at T11 and T12. Id. Based upon his evaluation of plaintiff, Dr. Gore did not believe plaintiff had any urgent need to be seen by a neurologist. Id. Even after Dr. Gore's deferral of the neurology consult in January 2014, plaintiff's treating provider was still free to submit further information. Id.

Plaintiff also points out that he had Hepatitis C during his incarceration at GCC. Hepatitis C ("HCV") is a slow-developing disease, and cirrhosis and liver cancer often take decades to occur as a result of Hepatitis C. Gore Dec. ¶ 7. Therefore, testing is done in order to assess HCV patients' levels of liver dysfunction. Id. The medical standard for testing liver cirrhosis is through use of an AST to Platelet Ratio Index ("APRI") score. Id. The generally recognized cut-off for diagnosing liver cirrhosis is an APRI score of 2.0 or higher. Id. In 2013 and 2014, plaintiff's APRI scores were between 0.36 and 0.38, indicating that he did not have severe fibrosis or cirrhosis of the liver. Id.; Med. Rec. at 32-34, 308-09. Therefore, Dr. Gore did not believe that plaintiff had a medical need to receive Harvoni at the time he filed suit in this matter. Gore

Dec. ¶ 7. Plaintiff has not suffered any additional harm from not being treated with HCV medications Harvoni or Sovaldi. Id. Despite Dr. Gore's decision not to treat plaintiff with Harvoni, plaintiff continued to be monitored for HCV and other related conditions while he was housed at GCC. Id.

Plaintiff was also treated for a bile duct obstruction by his treating physicians at GCC. Id. at ¶ 8. Plaintiff had GI consultations on April 2, 2014, May 1, 2014, July 2, 2014, September 3, 2014, November 5, 2014, and May 5, 2014. Id.; Med. Rec. at 158, 172, 184, 190, 320, 323, 325. Dr. Gore signed off on the treating physicians' requests for a liver ultrasound and GI consultation. Id. Dr. Gore did not deny plaintiff surgery for a bile duct obstruction. Gore Dec. ¶ 8.

Finally, plaintiff has claimed that Nurse Angela Smith terminated his dialysis on June 14, 2014. Nurse Smith was employed by Corizon Health as the infirmary nurse manager at GCC on June 14, 2013. See Dkt. No. 57, Ex. 3 ("Smith Dec.") ¶ 3. The dialysis nurses were separate from Corizon, and they were responsible for deciding which inmates received dialysis treatment. Id. Nurse Smith did not decide to terminate plaintiff's dialysis on June 14, 2013 because she had no control over that decision-making process. Id.

### III. Grievance History

In most circumstances, the Virginia Department of Corrections grievance process is exhausted by the inmate appealing his grievance to Level II, the appeal level following a formal grievance. See Dkt. No. 57, Ex. 4 ("Whitehead Dec."); Dkt. No. 57, Ex. 6 ("Grievance Policy") at 7-11. Grievance records produced by GCC demonstrate that plaintiff grieved to Level II regarding medical complaints on only two occasions prior to filing this lawsuit, and neither of those complaints pertains to the issues plaintiff has raised in the instant lawsuit. Whitehead Dec.; see also Dkt. No. 57, Ex. 5 ("Grievance Rec."). In Grievance No. GCC-14-REG-00260, plaintiff complained that his dialysis was cut short on March 14, 2014, due to scheduling of plaintiff's

medical appointments. Whitehead Dec.; Grievance Rec. at 5-9. The grievance was held to be unfounded. Id. In Grievance No. GCC-14-REG-00394, plaintiff complained to Level II that he did not receive his morning medications on June 3, 2014. Whitehead Dec.; Grievance Rec. at 10-15. This grievance was also held to be unfounded. Id. Finally, in Grievance No. GCC-13-REG-00389, plaintiff complained only to Level I that his dialysis was cut short on June 14, 2013. Whitehead Dec.; Grievance Rec. at 1-4. This grievance was also found to be unfounded, and plaintiff did not appeal. Id. Based upon the Grievance Policy implemented at GCC, plaintiff has not exhausted his claims against Dr. Gore or Nurse Smith. Whitehead Dec.; Grievance Policy.

### IV. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Celotex, 477 U.S. at 324 (quoting Rule 56(e) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by [other evidence] designate 'specific facts showing that there is a genuine

issue for trial.'"). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Therefore, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587.

### V. Analysis

#### A. Plaintiff Failed to Exhaust His Administrative Remedies

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). The PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. In the context of prisoner suits, proper exhaustion provides prisons the opportunity to correct their errors before being hauled into federal court, reduces the quantity of prisoner suits by either granting relief at the

administrative level or persuading prisoners not to further pursue their claim in a federal court, and improves the quality of the prisoner suits that are filed in federal court by creating an administrative record for the court to reference. Id. The benefits of proper exhaustion are only realized if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As the Supreme Court has noted, if a prisoner could properly exhaust his claims without complying with the procedural rules of the prison's grievance system, a prisoner who did not want to participate in the prison grievance process could avoid the process altogether by simply filing a prison grievance he knew would be dismissed for procedural deficiency. Woodford, 548 U.S. at 96. To prevent this type of abuse, this Circuit has held that a prisoner cannot exhaust his administrative remedies by failing to follow the required procedural steps, and the proper return of an improperly filed grievance does not serve to exhaust a prisoner's administrative remedies. Moore, 517 F.3d at 725, 729.

Plaintiff as a Virginia inmate is required to exhaust the claims raised in the instant complaint in accordance with the Virginia Department of Corrections ("VDOC") grievance procedures. In particular, he must comply with VDOC OP 866, which provides multiple levels of administrative remedies in the form of inmate grievances. Per OP 866-7.13, an inmate must first attempt to resolve any issues informally. Prison officials must respond to the inmate's complaint within fifteen days of receiving an informal complaint. See OP 866-7.13. After seeking informal resolution, an inmate may file a regular grievance to the warden or superintendent. The grievance must be filed within thirty days of the underlying incident or occurrence. See OP 866-7.14. Depending on the subject of the grievance, up to two additional levels of review by higher authorities within VDOC may be available following the filing of a regular grievance. See OP 866-7.15.

Proper administrative exhaustion requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004). As has been recognized previously in this district, "the PLRA amendment made [it] clear that exhaustion is now mandatory." Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) (Ellis, J.). A prisoner now must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy or effective. Porter v. Nussle, 534 U.S. 516, 524 (2002). Moreover, an inmate now must exhaust administrative remedies even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. Davis v. Stanford, 382 F.Supp.2d 814, 818 (E.D. Va. 2005) (Hilton, J.), aff'd, 127 Fed. App'x 680 (4th Cir. May 10, 2005).

According to facility records, plaintiff did not grieve his complaints regarding termination of his dialysis through the second level or the appeal level. Whitehead Dec.; Grievance Rec. at 1-4. Plaintiff did not grieve through the regular grievance process any of his claims regarding Dr. Gore. Specifically, he did not file any grievance complaining that Dr. Gore failed to refer him to a neurologist, that Dr. Gore failed to provide him HCV medications, or that Dr. Gore failed to refer him for surgery for a bile duct obstruction. See Grievance Rec. at 1-15. Therefore, plaintiff's claims must be dismissed for lack of jurisdiction because he has failed to exhaust his administrative remedies. 42 U.S.C. § 19973(a).

B. Defendant Did Not Violate Plaintiff's Eighth Amendment Rights

Even if plaintiff's claims had been properly exhausted prior to filing this lawsuit, summary judgment in favor of Dr. Gore, Nurse Smith, and Nurse Kee is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that the named defendants did not violate plaintiff's Eighth Amendment rights and plaintiff has not produced any evidence to the contrary.

## VI. Conclusion

For the foregoing reasons, plaintiff's request for the appointment of counsel must be denied and defendants' Motion for Summary Judgment must be granted. An appropriate Order shall issue.

Entered this 3rd day of June, 2016.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia